# UNITED STATES DISTRICT COURT

for the
Eastern District of Wisconsin

In the Matter of the Search of:

Information associated with
ashister@yahoo.com that is stored at
premises controlled by Oath Holdings, Inc.

Case No. **19-946M(NJ)**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

See Attachment A.

located in the Eastern District of Wisconsin, there is now concealed:

See Attachment B.

The basis for the search under Fed. R. Crim P. 41(c) is:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of: 42 U.S.C. § 1320a-7b(b) and 18 U.S.C. § 1347

The application is based on these facts: See attached affidavit.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days:_____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent Jill Dring, FBI
*Printed Name and Title*

Sworn to before me and signed in my presence:

Date: _November 6, 2019_

_____
*Judge's signature*

Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed Name and Title*

Case 2:19-mj-00946-NJ   Filed 12/11/19   Page 1 of 22   Document 1

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Jill Dring, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with certain accounts that is stored at premises controlled by Oath Holdings, Inc., an email provider and record holder for Yahoo! Mail, headquartered at 1701 First Avenue, Sunnyvale, CA 94089. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), 2703(c)(1)(A) and 2713 to require Oath Holdings, Inc. to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2. I am a Special Agent with the FBI, and have been since May of 2012. I am currently assigned to the FBI Milwaukee Division's White Collar Crimes squad. As a Special Agent with the FBI, I have investigated criminal matters related to heath care fraud and cyber matters. I have received training in health care violations. With regard to this matter, I am collaborating with State and Federal law enforcement officers, including the United States Department of Health and

Human Services (U.S. DHHS) Office of Inspector General, and the Wisconsin Department of Justice's Medicaid Fraud Control and Elder Abuse Unit.

3.     This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 42 USC 1320a-7b(b) (prohibiting kickbacks in healthcare), 18 USC 1347 (health care fraud) have been committed by Alexander Shister, David Guerrero, and their associates. There is also probable cause to search the information described in Attachment A for evidence of these crimes further described in Attachment B.

## JURISDICTION

5.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

6.     The applied for search warrant relates to an ongoing investigation by state and federal authorities into health care fraud and related criminal activity. Specifically, the applied for warrant seeks evidence described in Attachment B from an email account of Alexander Shister who owns several pharmacies in the

Milwaukee area. The identification of this email account, and evidence linking it to the above-described offenses, was obtained as described below.

7.     On June 5, 2018, the Milwaukee County Circuit Court issued a search warrant for the residence of David Guerrero, Jr., located at 3131 South 30th Street, Milwaukee, Wisconsin. This warrant granted law enforcement authority to search and to seize, in part, any electronic storage devices or electronic media that may have been used as a means to commit the offenses.

8.     The facts establishing probable cause for the search of Guerrero residence were set forth in detail in the affidavit of MFCEAU Investigator Alfredo Gutierrez. That affidavit explains, in summary, that evidence obtained during the investigation shows that from on or before September 2016 through December 2017, Guerrero was involved in generating prescriptions for compound pain creams and having those prescriptions filled at specific pharmacies owned by Alexander Shister. For this service, Shister-owned pharmacies paid Guerrero several thousand dollars. Many of the patients who received these prescriptions were insured through the Wisconsin Medicaid program. Investigators know that prescription compound medications are a common source of fraud because they are often billed and reimbursed at high rates compared to other medications. Here, the Wisconsin Medicaid program paid the Shister-owned pharmacies between $300 and $1000 per prescription filled.

9.     From on or before September 2016 through July 2017, Guerrero worked at Clinica Latina, located at 1238 South Cesar Chavez Drive, Milwaukee,

Wisconsin, and Viva Advanced Heathcare, located at 1107 West Oklahoma Avenue, Milwaukee, Wisconsin. Clinica Latina is owned and operated by Dr. Leonard Aponte. Viva Advanced Healthcare is owned and operated by Dr. Manual Thomas. Guerrero is not a licensed health care provider.

10. During this same time period, Alexander Shister owned and/or operated several pharmacies, including Medpoint Pharmacy, 2501 West Silver Spring Road, Milwaukee, Wisconsin; Omnicare Pharmacy, 1134 West North Avenue, Milwaukee Wisconsin; and Greenfield Pharmacy, 5233 South 27th Street, Greenfield, Wisconsin; Clinica Latina Pharmacy, 1238 S Cesar E Chavez Drive, Milwaukee, Wisconsin.

11. Between September 16, 2016 and July 11, 2017, Dr. Aponte prescribed approximately 663 compounds to 255 Medicaid members. Medpoint and other pharmacies owned by Shister filled and dispensed the compound prescriptions. These pharmacies billed the Medicaid program approximately $2,551,518.06 for these prescriptions, and received approximately $528,138.08 in payments from Medicaid.

12. Between November 3, 2016 and December 29, 2017, Dr. Thomas prescribed approximately 1,247 compounds to 374 Medicaid members. Medpoint, and other pharmacies owned by Shister filled and dispensed the compound prescriptions. These pharmacies billed the Medicaid program approximately $2,153,296.86 for these prescriptions, and they received approximately $428,455.60 in payments from Medicaid.

13.     As part of the investigation, investigators obtained records from Chase Bank for an account in the name of Sarah Guerrero, who is David Guerrero's wife. Statements from this account show that, between January 2016 and December 2017, the Shister-owned pharmacies made around 100 payments to this account, which in total exceeded $100,000.

14.     During the investigation, investigators interviewed around 15 patients of Drs. Aponte and Thomas who were prescribed compound medications. Many of those patients stated they were often unaware the compound medication, a pain cream, was prescribed for them. Some patients stated they typically received a jar of compound pain cream at a subsequent office visit. Most patients stated the cream had little to no effect on their reported pain.

15.     During the investigation, investigators recovered trash from Guerrero's residence. Documents and items recovered from these trash pulls included the following: Viva Advanced Healthcare patient lists for 40 different dates including the names, dates of birth, phone numbers, and Medicaid/Medicare identification numbers of the patients, and the time of the appointment; blank compound prescriptions forms with letterhead from Viva Advanced Healthcare pre-signed with Dr. Thomas' signature; prescriptions filled out with patient information and medications prescribed; prescriptions with no information written on them pre-signed by both Drs. Aponte and Thomas; two jars of compound pain cream not prescribed to David Guerrero.

16. Records collected by Wisconsin DHS OIG during an audit of Viva Advanced Healthcare included documentation between April 1, 2016 and March 31, 2017. Of the twenty-five (25) patient files reviewed, sixteen (16) patients were billed as having received a compound pain cream from Dr. Thomas that is not documented in their medical records. Of the twenty-five (25) patient files reviewed, one (1) patient record indicates the patient was prescribed a compound pain cream, but does not list the date prescribed. All other medications listed have the date the medication was prescribed.

17. On June 7, 2018, Dr. Aponte was interviewed by investigators. As part of that interview, Dr. Aponte stated (in summary) that Guerrero started working at the clinic one-and-a-half to two years before that date, but Guerrero was never a paid employee. According to Aponte, Guerrero worked for a lab company and came to the clinic to do urine tests. With regard to compound creams, Dr. Aponte said that Guerrero was getting cases of compound creams delivered to the clinic and that Guerrero would give patients jars of cream. Dr. Aponte said that after a patient complained to Aponte about the price of the cream being over $400, Aponte told Guerrero to stop giving it to patients. According to Aponte, he did not prescribe many compounds, maybe around 10 altogether. However, in a subsequent interview, Dr. Aponte said that he signed many prescriptions for pain creams at the request of Guerrero; however, Dr. Aponte thought that the creams were not expensive.

18.    On and after June 7, 2018, investigators interviewed several other employees of Clinica Latina, including R.V., P.P., and A.L. All of these employees said that they had worked with Guerrero, and that Guerrero was largely responsible for patients receiving compound pain creams. All observed Guerrero hand jars of pain cream to patients at the clinic.

19.    On an after June 7, 2018, investigators interviewed R.R. and G.C. Both said they worked with David Guerrero at Viva Advanced Healthcare. Both said that Guerrero would bring in boxes of compound pain creams to the clinic and hand them out to patients at the clinic.

20.    On June 7, 2018, state and federal authorities executed the state-issued search warrant at Guerrero's residence, 3131 South 30th Street, Milwaukee, Wisconsin. At that location, agents found, among other things, approximately 80 packaged urine samples, and 170 prescription compound creams, most of which had labels listing the patient, date filled, lab/pharmacy, and physician. The vast majority of compound cream were filled by Medpoint Pharmacy (68) and Omnicare Pharmacy (84), both of which are owned by Alexander Shister. Dr. Aponte was listed as the prescribing doctor on approximately 24 of the creams, and Dr. Thomas was listed as the prescribing doctor on approximately 144. Records show that the vast majority of the creams had been billed to, and paid by, Medicaid. Several of the creams were past their expiration dates, according to the labels on the jars. In addition, agents found boxes containing more than 100 filled-out prescriptions from Drs. Thomas and Aponte for prescription creams, as well as other patient

7

information. Many of these prescription forms were pre-printed with the fax number for Medpoint or Omnicare Pharmacies. Further, they were preprinted with a specific formula for the compound ingredients (i.e. Lidocaine, etc.), which is generally inconsistent with the concept of compound medications specifically tailored to an individual patient's needs.

21.     As part of the investigation, agents interviewed a source of information ("Source") who stated that Source knows both Guerrero and Shister. Source stated that at one point, Shister approached Source and offered to pay Source $100 for each compound prescription and for each refill Source helped route to Shister's pharmacies. Source stated that Source spoke to Guerrero about this offer from Shister and Guerrero was interested.

22.     As part of the investigation, agents identified email addresses healthconnect37@gmail.com and davidx.guerrero@gmail.com which belonged to David Guerrero. Evidence showed that Guerrero used these accounts for, among other things, communicating with others relating to his activities concerning compound pain creams. On August 1, 2019, agents obtained a search warrant for the contents of these email accounts. That warrant was thereafter served on Google, and Google provided results from that warrant to agents on September 5, 2019.

23.     As part of the review of those search warrant results, agents found emails showing connections between Alexander Shister and Guerrero relating to compound pain medication.

8

a.     For example, in October of 2016, an email was sent from healthconnect37@gmail.com to nrosbeck@gmail.com, stating "Please view attachment so we can keep tract (sic) on refills and patients we need to reach out to for compounds. Please speak to Alex to confirm every 2 weeks for payment on compounds." An attachment was also included and titled, "Apontes Compound". The attachment was a spreadsheet containing a list of patient names separated on three different worksheets labeled CL, VA and Gladys.  The "CL" tab, contained approximately 295 names. The "VA" tab, contained approximately 58 names. The "Gladys" tab contained approximately 6 names.

b.     A response to Guerrero's email was sent on the same day which read, "Alex is aware is (sic) owes you \$600 more. Total of \$1600 for 16 scripts up to 9/30. There were 21 submitted but not all went through." Guerrero replied, "Sounds great, Lets (sic) always update on what ones didn't get approve so I can reach out to the patients. They will keep calling :) Happy Monday."

c.     In September 2017, Guerrero sent an email to Alexander Shister at email address **ashister@yahoo.com**. The email included an attachment of a spreadsheet titled "List of PA for CL". The spreadsheet contained a list of names in a column titled "Patients." This list appeared to be the same list of names that had appeared in a spreadsheet titled, "Compounds," which Guerrero had sent by email to several other individuals.

9

d.    On October 5, 2017, Alexander Shister, **ashister@yahoo.com**
forwarded an email to David Guerrero, healthconnect37@gmail.com. The
original email was written by Duska Stanic, duskica5@gmail.com, and stated
"Attached are the scripts on the new pad. Please let me know if you have any
questions." There were six attachments, including the following, which is a
prescription for a compound pain cream medication with pre-printed
ingredients (patient information redacted):



e.    In September of 2017, Guerrero sent an email to
jerry@heritagequalityprinting.com. The email contained the following
attachment titled "Topical pain cream – Medicaid script":

Patient Name _____ Date _____

DOB _____

Patient Home Phone # _____ Cell _____

Address _____

Allergies _____

Doxepin HCL 5% 45GM Voltaren Gel 1% Lidocaine

SIG: Apply 2 to 3 times per day to affected areas

Other SIG: _____

Refills (circle one)

1    2    3    4    5    6    7    8    9    10

No Refills ____

Physician Signature _____ Physician Name _____

DEA _____           Date _____.

Your Prescription is being filled at Clinica Pharmacy

You will receive a call within 1 hour of us receiving your prescription.

Your package will be arrive 24-48 hours after speaking with you.

Please feel free to call us at 414-585-0068.

As part of the email chain, Jerry@heritagequalityprinting.com and Guerrero discussed the printing of the above prescription form. They decided that the bottom portion would be a tear off piece. Additionally, Guerrero stated that the printing should be billed to Clinica Latina Pharmacy. Investigators know from reviewing Guerrero's emails that Shister is leasing space for Clinica Latina Pharmacy from Aponte.

24.   As part of the investigation, a subpoena was sent to Oath Holdings, Inc/Yahoo for subscriber information associated with ashister@yahoo.com. In response to that subpoena, Oath Holdings, Inc/Yahoo provided information showing

11

that the account is registered under the name Alexander Shister. The account was opened on April 2, 2008, and was associated with phone numbers 414-737-9585 and 414-333-2478. Phone number 414-737-9585 is associated with Greenfield Pharmacy. Phone number 414-333-2478 is associated with Clinica Latina Pharmacy.

25. In general, an email that is sent to a Yahoo subscriber is stored in the subscriber's "mail box" on Oath Holdings, Inc./Yahoo servers until the subscriber deletes the email. If the subscriber does not delete the message, the message can remain on Oath Holdings, Inc./Yahoo servers indefinitely. Even if the subscriber deletes the email, it may continue to be available on Oath Holdings, Inc./Yahoo servers for a certain period of time.

## BACKGROUND CONCERNING EMAIL

26. In my training and experience, I have learned that Oath Holdings, Inc./Yahoo provides a variety of on-line services, including electronic mail ("email") access, to the public. Oath Holdings, Inc./Yahoo allows subscribers to obtain email accounts at the domain name yahoo.com, like the email account listed in Attachment A. Subscribers obtain an account by registering with Yahoo. During the registration process, Yahoo asks subscribers to provide basic personal information. Therefore, the computers of Yahoo are likely to contain stored electronic communications (including retrieved and unretrieved email for Yahoo subscribers) and information concerning subscribers and their use of Yahoo services, such as account access information, email transaction information, and account application information. In my training and experience, such information may constitute

12

evidence of the crimes under investigation because the information can be used to identify the account's user or users.

27. A Yahoo subscriber can also store with the provider files in addition to emails, such as address books, contact or buddy lists, calendar data, pictures (other than ones attached to emails), and other files, on servers maintained and/or owned by Oath Holdings, Inc./Yahoo. In my training and experience, evidence of who was using an email account may be found in address books, contact or buddy lists, email in the account, and attachments to emails, including pictures and files.

28. In my training and experience, email providers generally ask their subscribers to provide certain personal identifying information when registering for an email account. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. Based on my training and my experience, I know that, even if subscribers insert false information to conceal their identity, this information often provides clues to their identity, location, or illicit activities.

29. In my training and experience, email providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (*i.e.*, session) times and durations, the types of

13

service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, email providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the email account.

30. In my training and experience, in some cases, email account users will communicate directly with an email service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Email providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

31. Pursuant to 18 U.S.C. § 2713, this application seeks a warrant to search all responsive records and information under the control of Oath Holdings, Inc./Yahoo, a provider subject to the jurisdiction of this court, regardless of where Oath Holdings, Inc./Yahoo has chosen to store such information. The government intends to require the disclosure pursuant to the requested warrant of the contents

of wire or electronic communications and any records or other information pertaining to the customers or subscribers if such communication, record, or other information is within Oath Holdings, Inc./Yahoo's possession, custody, or control, regardless of whether such communication, record, or other information is stored, held, or maintained outside the United States.

32. As explained herein, information stored in connection with an email account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, the information stored in connection with an email account can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, email communications, contacts lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time. Further, information maintained by the email provider can show how and when the account was accessed or used. For example, as described below, email providers typically log the Internet Protocol (IP) addresses from which users access the email account, along with the time and date of that access. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the email account access and use relating to the crime under investigation. This geographic

15

and timeline information may tend to either inculpate or exculpate the account owner. Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (*e.g.*, location information integrated into an image or video sent via email). Last, stored electronic data may provide relevant insight into the email account owner's state of mind as it relates to the offense under investigation. For example, information in the email account may indicate the owner's motive and intent to commit a crime (*e.g.*, communications relating to the crime), or consciousness of guilt (*e.g.*, deleting communications in an effort to conceal them from law enforcement).

## CONCLUSION

33. Based on the information described above, I request that the Court issue the proposed search warrant.

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with ashister@yahoo.com that is stored at premises owned, maintained, controlled, or operated by Oath Holdings, Inc., an a company headquartered at 1701 First Avenue, Sunnyvale, CA 94089.

## ATTACHMENT B

### Particular Things to be Seized

I.    Information to be disclosed by Oath Holdings, Inc. (the "Provider")

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, regardless of whether such information is stored, held or maintained inside or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.    The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email;

b.    All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c.    The types of service utilized;

d.     All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;

e.     All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken; and

f.     For all information required to be disclosed pursuant to this warrant, the physical location or locations where the information is stored.

The Provider is hereby ordered to disclose the above information to the government within 14 days of the issuance of this warrant.

2

## II.    Information to be seized by the government

All information described above in Section I that constitutes evidence of violations of 42 USC 1320a-7b(b) and 18 USC 1347, those violations involving Alexander Shister, David Guerrero, or their associates and occurring after January 1, 2016, including information pertaining to the following matters:

(a)    the provision of, billing for, and any payments associated with health care services, including prescription medication and patient information, and any forms associated with such matters;

(b)    pharmacies, medical clinics, medical providers, medical records, patient records, health insurance, and state agencies involved in health care billing, payments, insurance, regulation, and related matters;

(c)    finances, assets, liabilities, earnings, sources of income, employment, and banking information;

(d)    actions to prepare for, in furtherance of, or to conceal the crimes under investigation, including coordination with and payments to or from any associates;

(e)    how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

(f)    the email account owner's state of mind as it relates to the crime under investigation;

3

(g)     the identity of the person(s) who created or used the account, including records that help reveal the whereabouts of such person(s);

(h)     the identity of the person(s) who communicated with the email account about matters described above, including records that help reveal their whereabouts.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.